CHARLES LEWIS v. W. L. DAVIDSON'S EXECUTOR.

1. A suit, though originally instituted to recover an amount alleged to be due on note, may, by the plaintiff's pleadings, be changed to a suit on account.

2. The firm of A. B. & Co. was indebted to C.; B. retired from the company, and the new firm of A. & Co. gave a note to C. for the amount of the debt; *held*, in a suit against the old firm of A. B. & Co., that the firm of A. B. & Co. was not *prima facie* liable for the payment of the note.

3. See this case for circumstances under which a cost bond was permitted to be filed two years after judgment in the District Court, and held sufficient to require an examination of the case on its merits.

Error from Harris.    Tried below before the Hon. James Masterson.

This cause was dismissed on motion filed in this court February 10, 1873, because no bond for costs had been filed, as required by the statute.

On the tenth of February, 1873, a certified copy of a cost bond was filed in this court, the original of which was approved by the district clerk January 28, 1873. More than two years had elapsed from the date of the judgment before the cost bond was filed with the district clerk. The plaintiff in error moved for a rehearing, and to reinstate the cause.

*Stewart & Barziza*, for plaintiff in error on motion to reinstate.—This court sustained the motion to dismiss under Article 1517, Paschal's Digest, act of February 1858, as follows:

"Article 1517.    No writ of error to remove a cause from the District to the Supreme Court shall *in any case* issue unless the plaintiff in error give bond, with sufficient security for all costs which may accrue in the Supreme Court, and which may have accrued in the District Court."

We have italicised the words "in any case," because we imagine they must have been the cause and reason of the construction of that statute.

Article 1495, Paschal's Digest, a part of the act of May, 1846, defines when a writ of error can be sued out in the courts of this State; and under that article a writ of error was a writ of right, bond or no bond, as much as is a writ of *habeas corpus*. All you had to do was to ask the clerk for it in writing. Bond or no bond, he was

obliged to issue the writ. No reason need be assigned for the writ, because it was a writ of right; and so Mr. Justice Lipscomb held as early in Texas jurisprudence as 1851, in the case of Turner v. Hamilton, 6 Texas, 250.

The history and the reason of Article 1517, requiring cost bond in any case (being part of the act of February, 1858), was that it was found that parties might take up cases, even on frivolous grounds, and compel the clerks to make out transcripts without being paid for their work, and it was not deemed fair, after practice had demonstrated it, that the clerks should be thus imposed upon; and it was right and proper that the clerks should be protected, just as they are now and always have been, in matters of appeal.

How could the passage of Article 1517 alter Article 1495 as to *supersedeas?*

The effect of Article 1517, and the evident, plain, palpable intention of it, was to put an appeal by writ of error on the same footing as an appeal in open court, viz.: a bond in double the amount shall act as a suspension of the judgment in an appeal, and in a writ of error shall act as a *supersedeas* of the execution; and in both instances a bond for costs shall be required if a party is either unable or unwilling to give bond for *supersedeas* or appeal bond. (Now they make the oath *in forma pauperis.*)

What is the object of a bond for costs? We answer, that it is to secure the officers of the court. The court will observe that the condition of the bond for *supersedeas* (Art. 1495, Pas. Dig.) is that the plaintiff in error "shall comply with the judgment, order or decree of the Supreme Court." The bond for an appeal is conditioned for the "performing the judgment, sentence or decree of the Supreme Court."

Now, we ask if the condition recited above is not ex-

actly the same? It is the same, and the judgment of the Supreme Court, under the writ of error, will carry the same costs with it as the judgment under that appeal bond; and this court is rendering judgments every day upon appeal bonds which carry the very costs which we are told we must secure by an extra bond in writ of error.

Article 1503, Paschal's Digest, exempts executors and administrators, and it was long ago attempted to require them to give bond for costs, by comparing that section with others; but all the judges held otherwise in the following cases: Ennis v. Crump, 6 Texas, 35; Daniels v. Gregg, 13 Texas, 384; Battle v. Howard, 13 Texas, 347.

The act exempting executors, etc., was passed in March, 1848. But it will be said that executors and administrators shall give bond for costs now, because there is Article 1517 of the act of 1858, which requires a bond in any case; but our Supreme Court did not think so when Judge Roberts delivered the opinion in Tucker v. Anderson, 25 Texas Sup., 155. On the other hand, the court decided just the reverse.

If the court please, we desire to call your attention to all the cases which have been dismissed, so far as we can now find, on account of Article 1517 not having been complied with:

1. We note the case of Waterhouse v. Love, 23 Texas, 559. The statement of facts says distinctly, "they filed no bond either to supersede the execution on the judgment, or for costs."

2. In Peabody v. Marks, 25 Texas, 19, there was no *supersedeas* bond.

3. In Prestige v. Prestige, 25 Texas, 585, no appeal bond was filed.

4. In the case of Dawson v. Hardy, 33 Texas, 198, Mr. Justice Lindsay dismissed the writ of error, it seems, for

the want of a bond for costs, although it is stated in the report that a bond had been given, "conditioned as a *supersedeas* bond." With all due deference to the opinion of Judge Lindsay, we must say that he arrived at his conclusion hastily, and is not, in our opinion, supported by reason or authority ; and we further assert that this very point had been decided by our Supreme Court as early as January, 1860, and that, too, by a court consisting of Judges Wheeler, Roberts and Bell ; and we say that Mr. Justice Lindsay, in the case of Dawson v. Hardy, in 33 Texas, did not follow the established decision of our court ; that at that time the question of the construction of Article 1517 was a settled matter in our Supreme Court. We do not believe that Mr. Justice Lindsay would have delivered any such opinion had his attention been called to the case of Grier v. The State, 29 Texas, 487.

*Crank & Wilson, contra.*

*Stuart & Barziza,* for plaintiff in error.

*Crank & Wilson,* for defendant in error.—"In New York it may be taken as conclusively settled that a promissory note or bill of the debtor, though accepted by the creditor in full satisfaction, is not and cannot in law be a discharge of the debt so as to bar the original cause of action." (Putnam v. Lewis, 8 Johnson, 389; Frisbie v. Larned, 21 Wendell, 450, 452; Myers v. Wells, 5 Hill, 463, and numerous authorities cited on page 456.)

The party must, on the trial, produce and cancel the note, which was done in this case. (Small v. Jones, 8 Watts, 265; Hughes v. Wheeler, 8 Cowen, 77; Dayton v. Tull, 23 Wendell, 345; Hays v. McClung, 4 Watts, 452; Harris v. Johnston, 3 Cranch, 311; Hutchison v. Smith, 7 Paige Ch. R.)

In 4 Paige's Chancery Reports, 17, in the case of Bris-

ban v. Boyd and others, this principle is well settled, that where the "plaintiff denied all knowledge of the partnership having terminated at the time of the settlement, if they had sold goods, etc., the party is liable as if he were still a partner."

"And, further, that a customer who sells goods to one of the former partners on the credit of the firm, and without notice of the dissolution, may have a legal claim against his copartners for the goods sold." Certainly carrying the principle much further than was done in this case.

As to the question of notice, such as to absolve partners from liabilities to third persons for the future transactions of any partners acting for or on account of the firm and their liability for the debt originally contracted, see Story on Partnership, pp. 512, 513, 514, 544, 559, 562, 563.

McADOO, J.—On rehearing, we have deemed it proper to set aside the order dismissing the cause, because of the original non-filing of a cost bond. We find there is a good writ of error bond, and though irregularly filed there is now a cost bond. We think, therefore, that justice requires that the cause be examined on its merits.

This was a suit upon two notes, of date December 23, 1867, each for the sum of $3443.11, and due respectively in thirty and sixty days.

These notes were signed " W. T. Austin & Co.," and were payable to the order of W. L. Davidson. It was charged in the petition that the notes were made by W. T. Austin and the plaintiff in error, Lewis.

Austin in his answer admits his liability on the notes. Lewis pleaded *non est factum;* that he was not a member of the firm of W. T. Austin & Co., and that he was in no manner connected with W. T. Austin at the time

the notes were executed, and that the notes were without consideration as to him; admits that for a time, anterior to the execution of the notes, he had been in business with Austin under the firm name of W. T. Austin, Lewis & Co., but he avers that the consideration of these notes did not enter into the copartnership affairs of himself, and did not inure to his benefit. These pleas were under oath.

In this state of the pleadings W. L. Davidson died. The appellee, as his executor, filed a succession of amended petitions, charging fraud and conspiracy, and ultimately prayed that the notes be canceled, and the action is shaped in equity on a running account and general business transaction.

Lewis in amended answers pleads limitation; that the notes were taken by W. L. Davidson in payment and satisfaction of the account, and was an acquittance of him of all claims which Davidson might have had against him by reason of his former connection with the firm of W. T. Austin, Lewis & Co.; that for a valuable consideration Austin was to pay all the liabilities of the firm, and that Davidson was advised of such obligation.

It is assigned as error, that the court erred in overruling the exceptions to the plaintiff's amended petition. We do not think the court erred in so ruling. It is insisted that the court erred in excluding the testimony of W. T. Austin. At the time this trial was held the law had not yet been passed removing the disability to testify on account of interest.

We do not think it was error to exclude the testimony of a defendant when put upon the stand by a co-defendant.

The third assignment of error is, "that the court erred in the first charge to the jury by directing the jury that the firm of W. T. Austin, Lewis & Co. were *prima facie* liable for a note signed by Austin & Co.; and by charg-

ing that the publication of the dissolution of the partnership of W. T. Austin, Lewis & Co., connected with the fact that this creditor of the old firm settled by taking the notes of Austin & Co., were not sufficient notice to the creditor (plaintiff herein), or his intestate, unless it was shown that plaintiff's intestate had read such publication; thus directly stating the verdict they must bring in."

The first part of the charge was clearly error. The charge would have been far nearer correct if it had been that W. T. Austin, Lewis & Co. were *prima facie not* liable for a note signed "Austin & Co." This error is of such a character as to render a reversal of the judgment imperative.

The judgment is therefore reversed and the cause remanded.

REVERSED AND REMANDED.